# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES MARK MCLAUGHLIN,** | ) | |
| **SHERRY MCLAUGHLIN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:16-cv-02041-AKK** |
| **OCWEN LOAN SERVICING, LLC,** | ) | |
| ***et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

After receiving notice of default and a foreclosure on their residence, James McLaughlin and Sherry McLaughlin filed this lawsuit alleging claims under state law and federal statutes against Ocwen Loan Servicing, LLC ("Ocwen") and the Bank of New York Mellon Trust Company National Association ("Mellon"). The court has for consideration the Defendants' Motion for Summary Judgment, doc. 32. The motion is fully briefed, docs. 32-1, 40, and ripe for review. For the reasons explained more fully below, except for the claim in Count XI relating to two of the qualified written requests (QWRs), the Defendants' motion is due to be granted. As for Count XI, to bring finality for the parties, the court **SETS** this matter for a pretrial conference on July 20, 2018 at 12:15 p.m., and for trial on August 20,

2018[1] at 9:00 a.m. in Courtroom 4A of the Hugo L. Black United States Courthouse. The parties are directed to the attached pretrial instructions.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress*

---

[1] This case is currently the second on the court's trial docket. Assuming the first, *United States v. Tyrell*, 2:18-CR-43-AKK, tries, this case will begin on August 23, 2018.

*& Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 244 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual dispute will be resolved in the non-moving party's favor when sufficient competent evidence supports that party's version of the disputed facts. *But see Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL BACKGROUND[2]

In March 2004, the Plaintiffs executed a mortgage on their residence with Homecomings Financial Network, Inc. in support of a promissory note. Docs. 32-1 at 4-5; 40 at 3. The note passed from Homecomings through a succession of other creditors, and eventually to Mellon. Doc. 32-1 at 5. The original servicer, GMAC Mortgage, declared the Plaintiffs in default after they failed to make multiple mortgage payments. *Id*. Subsequently, Ocwen began servicing the loan. *Id.* The Plaintiffs brought the loan current in June 2014, but subsequently fell behind again on their payments. *Id.* at 6. As a result, in September 2015, Ocwen sent the Plaintiffs a notice of default and requested a $15,378.91 payment to cure the default, which the Plaintiffs never fully paid off. *Id* at 7. Consequently, in January 2016, the Defendants accelerated the loan. *Id.* at 8. The Plaintiffs have never attempted to repay the full amount, and have stopped making payments. *Id.* at 7-8.

Following the acceleration, the Plaintiffs submitted credit disputes concerning Ocwen to the consumer reporting agencies ("CRAs") Experian and

---

[2] The Plaintiffs have moved to strike the affidavit of Kevin Flannigan, doc. 32-3, contending that Flannigan lacks personal knowledge and the affidavit contains conclusions of law. Doc. 41. Flannigan's affidavit states he "has knowledge of the matters set forth herein" based on his review of "records in connection with the loan obtained by [the Plaintiffs])" that "Ocwen retains in the ordinary course of business." Doc. 32-3 at 3. "As a matter of law, personal knowledge can come from review of the contents of business files and records." *Mid-Continent Cas., Co. v. Don Brady Const. Co.*, No. CIV.A. 11-0088-CG-C, 2012 WL 1598149, at *2 (S.D. Ala. May 7, 2012) (quoting *In re Trafford Distributing Center, Inc.*, 414 B.R. 858, 862 (Bkrtcy. S.D. Fla. 2009) (internal quotation marks and alterations omitted). As to the second contention that the affidavit contains conclusions of law, the Plaintiffs fail to identify any such purported conclusions. *See* doc. 41. Therefore, the motion to strike fails.

Equifax. *Id.* Ocwen received notice of the disputes, conducted an investigation, and subsequently deleted the disputed reporting. *Id.* The Plaintiffs' counsel submitted multiple QWRs to the Defendants. *Id.* at 9. The parties agree Ocwen responded to two QWRs. Docs. 32-1 at 9; 40 at 6.

The Defendants scheduled a foreclosure sale for November 2016 and published notices in local newspapers and online. Docs. 32-1 at 9; 40 at 6. This lawsuit caused the Defendants to cancel the foreclosure sale. Doc. 32-1 at 9-10.

**III. ANALYSIS**[3]

The Plaintiffs plead nine claims under Alabama law: negligence (Count I), wantonness (Count II), unjust enrichment (Count III), wrongful foreclosure (Count IV), slander of title (Count V), breach of contract (Count VI), fraud (Count VII), false light (Count VIII), and defamation (Count IX). Doc. 14 at 8-16, 25. The Plaintiffs also plead alleged violations of federal laws: the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (Count X); the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* (Count XI); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (Count XII); the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count XIII); the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* (Count

---

[3] The Defendants have moved to strike the Plaintiffs' brief for failure to comply with the court's page limits. Doc. 42 (citing doc. 20 at 7-11). However, because the portions of the brief in excess of the page limit do not change the outcome of the motion, the court will not strike them.

XIV); and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* (Count XV). *Id.* at 17-25. Finally, the Plaintiffs plead a claim for declaratory relief (Count XVI). *Id.* at 25. The Defendants contend these claims fail for several reasons, which the court addresses in turn.

### A. Claims Abandoned by the Plaintiffs

The Plaintiffs have not responded to the Defendants' arguments concerning Counts V, VII, XIV, XV, and XVI, other than to note that they pleaded these claims in their complaint. *See* doc. 40. But "[i]n opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations and internal quotation marks omitted). Moreover, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Id.* Rather, "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Id.*; *see Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned and affirming grant of summary judgment on claim presented in complaint but not raised in initial response to motion for summary judgment); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325 (11th Cir. 2000) (finding claim abandoned where it was not briefed and argued in party's

response to motion for summary judgment). Accordingly, the motion is due to be granted as to Counts V, VII, XIV, XV, and XVI.

## B. The Negligence and Wantonness Claims (Counts I and II)

Under Alabama law, "[t]he elements of a negligence claim are a duty, a breach of that duty, causation, and damage." *Prill v. Marrone*, 23 So. 3d 1, 6 (Ala. 2009) (quoting *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala. 2001)). "To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994). Further, "[t]o be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Id.* (citing *Smith v. Davis*, 599 So. 2d 586 (Ala. 1992)).

Turning to the specifics here, the Plaintiffs plead the Defendants negligently and wantonly foreclosed on their residence and made misrepresentations to the Plaintiffs. Doc. 14 at 8-9. These claims fail because "Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing," as there is no independent duty of care upon which to base such a claim. *Duke v. JPMorgan Chase Bank Nat. Ass'n*, No. 2:14-CV-422-RDP, 2014 WL 5770583, at *4 (N.D. Ala. Nov. 5, 2014) (quoting *McClung v. Mortg. Elec. Registration Sys., Inc.*, No. 2:11-CV-03621-RDP, 2012 WL 1642209, at *7 (N.D. Ala. May 7, 2012)) (internal

quotation marks omitted). The duty, if any, is contractual, as it arises from the relevant mortgage agreement, promissory note, and any loan modifications. *Id.* While the Plaintiffs contend the Defendants breached their duty "to provide truthful and accurate information about the status of the loan account," doc. 40 at 33-34, they do not plead, however, that this duty exists independently of the contractual duties, or cite any cases stating they can plead negligence and wantonness claims against a mortgage servicer. Accordingly, the motion is due to be granted as to Counts I and II.

### C. The Unjust Enrichment Claim (Count III)

The Plaintiffs allege the Defendants improperly charged them, resulting in unjust enrichment. Doc. 14 at 9-10. To prevail on a theory of unjust enrichment, the plaintiff must show "that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Dickinson v. Cosmos Broad. Co.*, 782 So. 2d 260, 266 (Ala. 2000) (quoting *Hancock-Hazlett Gen. Constr. Co. v. Trane Co.*, 499 So. 2d 1385, 1387 (Ala. 1986)) (emphasis omitted). Alabama courts will imply a contract in law "to prevent a manifest injustice or unjust enrichment[.]" *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006) (quoting *Green v. Hospital Bldg. Auth. of Bessemer*, 294 Ala. 467, 470 (1975)). However, "[t]he existence of an express contract on a given subject generally excludes an implied agreement on the

same subject," barring unjust enrichment claims. *Id.* (citing *Brannan & Guy, P.C. v. City of Montgomery*, 828 So. 2d 914, 921 (Ala. 2002); *Vardaman v. Florence City Bd. of Educ.*, 544 So. 2d 962 (Ala. 1989)).

The Defendants contend that the mortgage and promissory note constitute an express contract. Doc. 32-1 at 12. The Plaintiffs do not dispute this, and, indeed, base their breach of contract claim upon that contract. *See* doc. 40. In the presence of an express contract, the court will not imply a contract in law. *See Mantiply*, 951 So. 2d at 656. Accordingly, the motion is due to be granted as to Count III.

**D. The Wrongful Foreclosure Claim (Count IV)**

In Count IV, the Plaintiffs plead a claim for wrongful foreclosure. "Under Alabama law, a mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1282 (N.D. Ala. 2013) (quoting *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. and Loan*, 607 So. 2d 180, 182 (Ala. 1992)) (internal citations omitted). Critically, "in order to state a claim for wrongful foreclosure, a foreclosure sale must have actually taken place." *Id.* (citing *Hardy v. Jim Walter Homes, Inc.*, 2007 WL 174391, at *6 (S.D. Ala. 2007)); *see Zanaty v. Wells Fargo Bank, N.A.*, No. 2:16-CV-0277-VEH, 2016 WL 6610443, at *5 (N.D. Ala. Nov. 9, 2016) (collecting cases). As the Defendants note, and the Plaintiffs do not dispute,

the foreclosure sale has yet to occur. *See* docs. 32-1 at 12-13; 40. Therefore, Count IV fails.

### E. The Breach of Contract Claim (Count VI)

In Count VI, the Plaintiffs plead the Defendants breached the mortgage contract by failing to provide a notice of intent to accelerate and failing to properly credit payments made towards the mortgage. Doc. 40 at 26-29.[4] "In order to recover on a breach-of-contract claim, a party must establish: (1) the existence of a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) damages." *Capmark Bank v. RGR*, LLC, 81 So. 3d 1258, 1267 (Ala. 2011) (citing *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)). Even if the Plaintiffs' allegations are true, to prevail, they must still show they performed under the contract. The Plaintiffs have failed to make this showing. In fact, they do not address the Defendants' contention that they fell behind on their loan, never brought it current, entered default, and never cured their default. *See* doc. 40. The Plaintiffs assert only generally that the original loan servicer's declaration of default was improper, allegedly because they were not in default. *Id.* at 3. However, they support this

---

[4] The Plaintiffs also contend the Defendants breached a covenant of good faith and fair dealing and that Ocwen breached a trial modification agreement it allegedly made with them. Doc. 40 at 27, 30. Neither of these allegations are pleaded in the complaint. *See* doc. 14. Because a plaintiff may not amend her complaint through statements made in pleadings, *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)), the court does not consider these contentions.

contention only with their own affidavits, in which they state, among other things, "we claimed that we were not in default," "Ocwen improperly defaulted my mortgage loan," "[Ocwen] could not explain why I was allegedly in default," and "I was never sent nor did I receive a proper notice of default[.]"[5] Docs. 40-1 at 3, 6-7; 40-2 at 3, 6-7. None of these statements meet the necessary evidentiary burden.

The first statement, "we claimed that we were not in default," falls short of the relevant standard of personal knowledge to establish that the Plaintiffs were, in fact, not in default. *See Pace*, 283 F.3d at 1278 (noting that affidavits in opposition to a motion for summary judgment must be based on personal knowledge) (citing Fed. R. Civ. P. 56(e)). Rather, it is a "claim[ ]," which does not establish the Plaintiffs' performance under the contract. The second statement, "Ocwen improperly defaulted my mortgage loan," is a legal conclusion. It is also conclusory, as the Plaintiffs do not explain why the default was improper or how they knew it was improper. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) (holding that a party cannot satisfy its burden at summary judgment by relying on legal conclusions or conclusory allegations) (citing *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986)). The third statement, that "[Ocwen] could not

---

[5] While the Plaintiff filed separate affidavits, their contents are identical. *See* docs. 40-1, 40-2.

explain why I was allegedly in default," also does not establish that the Plaintiffs were not in default; it shows only that Ocwen did not provide an explanation of the reasons for the default. As to the fourth statement, "I was never sent nor did I receive a proper notice of default," testimony that the Plaintiffs never received a notice of default is not testimony they were not in default.

In short, the Plaintiffs' contentions fall short of establishing their performance under the contract. Therefore, because the Plaintiffs' assertion that they were not in default is not supported by evidence sufficient to satisfy Rule 56(c), and because the Defendants have submitted unrefuted evidence of the default, *see* doc. 32-1 at 5-7, the Plaintiffs have failed to meet their burden of establishing that they performed under the contract. *See Hammet v. Paulding Cty.*, 875 F.3d 1036, 1049 (11th Cir. 2017) ("Although all reasonable inferences are to be drawn in favor of the nonmoving party, 'an inference based on speculation and conjecture is not reasonable'") (quoting *Ave. CLO Fund, Ltd. V. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013)); *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) ("When documentary evidence blatantly contradicts a plaintiff's account . . . a court should not credit the plaintiff's version on summary judgment") (quoting *Witt v. W. Va. State Police*, 633 F.3d 272, 276-77 (4th Cir. 2011)) (internal citations omitted); *Johnson v. Niehus*, 491 F. App'x 945, 949 (11th Cir. 2012) (explaining that a court need not credit self-serving evidence "which is

blatantly contradicted by the record, so that no fair-minded jury could believe it")
(internal quotation omitted); *Vicks v. Knight*, 380 F. App'x 847, 852 (11th Cir.
2010) (affirming summary judgment because "a reasonable factfinder could not
believe" the non-movant's assertions that were "contradicted by all of the relevant
evidence, with the exception of his own affidavit"). As such, because a party that
has not performed its own obligation cannot prevail on a breach of contract claim,
*see S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995), Count VI
fails.

**F. The False Light Claim (Count VIII)**

In Count VIII, the Plaintiffs plead that the Defendants placed them in a false
light by publishing notices regarding the foreclosure sale. Doc. 14 at 13-14. Under
Alabama law,

> One who gives publicity to a matter concerning another that places the other
> before the public in a false light is subject to liability to the other for
> invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to
> a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity
> of the publicized matter and the false light in which the other would be
> placed.

*Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004) (quoting *Butler v. Town of
Argo*, 871 So. 2d 1, 12 (Ala. 2003)) (internal quotation marks omitted). "A false-
light claim does not require that the information made public be private, but it *does*

require that the information . . . be *false*." *Id.* (citing *Butler*, 871 So. 2d at 12) (internal quotation marks omitted) (emphasis and alterations in original).

The Plaintiffs contend they were not in default, and that the publication of articles stating otherwise constitutes a false statement. Doc. 40 at 23-24. However, as discussed *supra* at III.E, the Plaintiffs' contention is not supported by evidence sufficient to satisfy Rule 56(c). Summary judgment is a time to "put up or shut up." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). To the extent that the Plaintiffs were in fact current on their mortgage, they should have produced the relevant evidence in opposition to the motion. Stating that they were not in default is insufficient for the reasons offered previously. Thus, because there is nothing in the record contradicting the truthfulness of the Defendants' statements, the motion is due to be granted as to Count VIII.

### G. The Defamation Claim (Count IX)

In Count IX, the Plaintiffs plead a defamation claim based on the Defendants' same statements that the Plaintiffs were in default. Doc. 14 at 14-16. A prima facie claim for defamation under Alabama law requires, among other things, "a false/defamatory statement concerning the plaintiff[.]" *Temploy, Inc. v. Nat'l Council on Comp. Ins.*, 650 F. Supp. 2d 1145, 1155 (S.D. Ala. 2009) (citing *Delta Health Group Inc. v. Stafford*, 887 So. 2d 887, 895-96 (Ala. 2004); *Gary v.*

*Crouch*, 867 So. 2d 310, 315 (Ala. 2003); *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 (Ala. 1988)). For the same reason discussed *supra* at III.F, i.e. that the Plaintiffs have not produced sufficient evidence to establish that they were not in default, they are unable to satisfy this element of their defamation claim. Therefore, Count IX also fails.

### H. The TILA Claim (Count X)

In Count X, the Plaintiffs plead the Defendants violated sections 1605, 1632(a), 1638(a)(3), 1638(a)(4), and 1638(b) of the TILA by making unauthorized charges, improperly amortizing the loan, and failing to make the necessary disclosures regarding these acts. Doc. 14 at 16-18. The TILA requires creditors to provide consumers with "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). A TILA claim under the provisions relevant here is time-barred if it is not filed "within one year from the date of the occurrence of the violation." *Adams v. Bank of Am., N.A.*, 237 F. Supp. 3d 1189, 1204 (N.D. Ala. 2017), *appeal dismissed sub nom. Adams v. Bank of Am., NA*, No. 17-12172-FF, 2018 WL 2229331 (11th Cir. Mar. 15, 2018) (citing 15 U.S.C. § 1640(e)). "The violation 'occurs' when the transaction is consummated. Nondisclosure is not a continuing violation for purposes of the

statute of limitations." *Velardo v. Fremont Inv. & Loan*, 298 F. App'x 890, 892 (11th Cir. 2008) (citing *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984)).

The Defendants contend the statute of limitations began to run when the Plaintiffs consummated the loan on March 25, 2004. Doc. 32-1 at 23-24. The Plaintiffs counter that every monthly statement from Ocwen since 2012 has violated the TILA by improperly adding new charges, bringing their claim within the statute of limitations. Doc. 40 at 40-41. However, the TILA "provides remedies for inadequate disclosures, not for the charging of unlawful fees." *Rice v. Seterus, Inc.*, No. 7:17-CV-00732-RDP, 2018 WL 513345, at *10 (N.D. Ala. Jan. 23, 2018). Therefore, this alleged conduct, which is not a TILA violation, has no bearing on the statute of limitations. Thus, as the Plaintiffs do not dispute that they consummated the loan transaction on May 25, 2004, *see* doc. 40, their TILA claim, Count X, is barred by the statute of limitations.

### I. The RESPA Claim (Count XI)

In Count XI, the Plaintiffs allege the Defendants violated the RESPA by failing to respond to two QWRs, and by making untimely responses. Doc. 14 at 18-19. The RESPA requires loan servicers to provide a written response to a QWR within thirty days, excluding Saturdays, Sundays, and public holidays. 12 U.S.C. § 2605(e). To state a RESPA claim for failure to respond to a QWR, a plaintiff must allege that "(1) the defendant is a loan servicer under the statute; (2) the

plaintiff sent a qualified written request consistent with the requirements of the statute;[6] (3) the defendant failed to respond adequately within the statutorily required days; and (4) the plaintiff has suffered actual or statutory damages." *Correa v. BAC Home Loans Servicing LP*, No. 6:11-CV-1197-ORL-22, 2012 WL 1176701, at *6 (M.D. Fla. Apr. 9, 2012) (citing *Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 836 (11th Cir. 2010); *Williams v. America's Servicing Co.*, No. 2:09-CV-755-FTM-29DNF, 2011 WL 1060652, at *2 (M.D. Fla. Mar. 22, 2011)).

The parties disagree on whether the Plaintiffs sent two or four QWRs to the Defendants, including the two the Plaintiffs contend the Defendants never answered. *See* docs. 32-1 at 9; 40 at 5-6. There are two critical flaws with the Plaintiffs' assertion they sent four QWRs. First, they have failed to produce copies of these QWRs, which they contend their lawyer sent to Ocwen. *See* doc. 40 at 5-6. The Plaintiffs' failure to provide these two purported QWRs as evidentiary support of their contentions is fatal to their prima facie case, which requires in part that they show they "sent a qualified written request consistent with the requirements of the statute." *See Correa*, 2012 WL 1176701, at *6. In the absence of these two QWRs, there is no way for the court to discern whether the Plaintiffs, in fact, sent

---

[6] The RESPA defines a QWR as "a written correspondence from the borrower to the servicer" that (1) "includes, or otherwise enables the servicer to identify, the name and account of the borrower;" and (2) "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

documents that complied "with the requirements of the statute." *Id.* In other words, the Plaintiffs have failed to prove their claim.

Second, the only evidence the Plaintiffs cite in support of their position, their affidavit testimony, is inconsistent with James McLaughlin's previous deposition testimony that he was only aware of two QWRs his counsel had sent to the Defendants.[7] *See* doc. 32-4 at 37. "In limited circumstances, a district court can disregard an affidavit as a matter of law when, without explanation, it flatly contradicts the affiant's own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Bell v. City of Auburn, Alabama*, 722 F. App'x 898, 899 (11th Cir. 2018) (citing *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016)). "For an affidavit to be disregarded as a sham, a party must have given clear answers to unambiguous questions that negated the existence of any genuine issue of material fact." *Id.* (citing *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984)). "A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).

---

[7] Sherry McLaughlin testified that she was present for the entirety of James McLaughlin's deposition and did not disagree with any of the answers he gave, except as to the age of their son. Doc. 32-5 at 11.

The question James McLaughlin answered—"[b]esides these two QWRs, are you aware of any other QWRs that were sent to Ocwen?"—is unambiguous, while his answer—"[n]o, sir"—is clear. *See* doc. 32-4 at 37. The Plaintiffs have not presented any explanation for the discrepancy between the deposition and the affidavits. *See* doc. 40. Accordingly, the court disregards, as a matter of law, those portions of the Plaintiffs' affidavits stating that they sent four QWRs to the Defendants, and finds that as to the two disputed QWRs, the Plaintiffs have failed to meet their burden.

This leaves the court with the parties' dueling assertions as to whether the Defendants timely responded to the two undisputed QWRs. *See* docs. 32-1 at 25; 40 at 5-6. This issue is a quintessential dispute of material fact for a jury to resolve. Accordingly, the motion is due to be denied solely as to the two QWRs the Defendants acknowledge receiving.

### J. The FCRA Claim (Count XII)

In Count XII, the Plaintiffs allege the Defendants violated sections 1681s-2(a) and 1681s-2(b) of the FCRA by reporting false information to CRAs and failing to properly investigate and respond to credit disputes.[8] Doc. 14 at 20-21. "The FCRA imposes a duty on furnishers . . . to provide accurate information to

---

[8] While the complaint pleads Count XII against all Defendants, the Plaintiffs do not dispute that they fail to allege that any CRA notified Mellon of their credit disputes. *See* docs. 32-1 at 27; 40. Accordingly, the motion is due to be granted as to the FCRA claim, if any, against Mellon.

consumer reporting agencies, and further prohibits a furnisher from reporting information that the furnisher knows or has reasonable cause to believe is inaccurate." *Adams*, 237 F. Supp. 3d at 1206 (citing 15 U.S.C. § 1681s-2(a)(1)(A)). "But, it is axiomatic that no private right of action exists for such violations of section 1681s-2(a)." *Id.* (citing 15 U.S.C. § 1681s-2(c)(1); *Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009)). Indeed, the Plaintiffs do not dispute this. *See* doc. 40 at 20-23. Thus, summary judgment is due as to the § 1681s-2(a) claim.

As for the § 1681s-2(b) claim, the "FCRA does provide a private right of action for a violation of section 1681s-2(b)." *Adams*, 237 F. Supp. 3d at 1206 (citing *Green v. RBS Nat. Bank*, 288 F. App'x 641, 642 (11th Cir. 2008); *Peart*, 345 F. App'x at 386). "Section 1681s-2(b) requires that, when a consumer reporting agency notifies a furnisher of a dispute regarding its reporting, the furnisher must conduct an investigation to verify the accuracy of that reporting and report the results to the consumer reporting agency." *Id.* (citing 15 U.S.C. § 1681s-2(b)). Regardless of the results of its investigation, the furnisher must report back to any CRA that notified it of the dispute. 15 U.S.C. § 1681s-2(b)(1)(C). If the investigation results in a finding that the furnisher provided incomplete or inaccurate information to the CRA, it must report the results of its investigation to all other CRAs that received such incomplete or inaccurate information. 15 U.S.C. § 1681s-2(b)(1)(D). Finally, if the investigation is inconclusive or results in a

finding that the furnisher provided incomplete or inaccurate information to the CRA, then the furnisher must "promptly modify that item of information; delete that item of information; or permanently block the reporting of that item of information." 15 U.S.C. § 1681s-2(b)(1)(E).

The Plaintiffs' only rebuttal to the Defendants' contention that Ocwen satisfied its duty under 15 U.S.C. § 1681s-2(b) is a somewhat muddled argument, simultaneously contending "the false information nevertheless was not corrected," doc. 40 at 22-23, while stating also that "Ocwen deleted the inaccurate information it had been reporting regarding the [Plaintiffs'] account," *id.* at 5. In light of the Plaintiffs' admission that Ocwen deleted the disputed information, the record supports the Defendants' contention that Ocwen complied with the FCRA by initiating an investigation after Experian and Equifax notified it of the Plaintiffs' credit disputes, deleting the disputed reporting, and notifying Experian and Equifax of this result. *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1304 (11th Cir. 2016) (citing 15 U.S.C. § 1681s-2(b)(1)(E)). Therefore, Count XII fails.

### K. The FDCPA Claim (Count XIII)

In Count XIII, the Plaintiffs assert the Defendants violated the FDCPA by attempting to collect amounts not owed, seeking unjustified amounts, improperly threatening legal action, and falsely stating amounts of debt owed. Doc. 14 at 22-23. To assert a FDCPA claim, a plaintiff must show that "(1) the plaintiff has been

the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA,[9] and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Janke v. Wells Fargo & Co.*, 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011) (citing *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000)). To support their contention that the Defendants are debt collectors, the Plaintiffs point to a number of allegations, including that the Defendants attempted a non-judicial foreclosure; attempted to collect debts using illegal and unconscionable methods; sought to collect an incorrect amount of debt in the default and acceleration notices; instituted an improper foreclosure based on an improper acceleration; and made statements, letters, and phone calls trying to collect past due amounts. Doc. 40 at 11-20. However, none of these contentions address the actual standard—i.e., whether the primary purpose of either Defendant's business is to collect debts, or whether either regularly collect debts owed to another. *See* 15 U.S.C. § 1692a(6). Discovery is designed in part for a party to obtain the relevant evidence on an issue on which that party has the burden of proof, or as the Seventh Circuit aply put it, "to put up or shut up." *Siegel*, 612 F.3d at 937. The Plaintiffs have failed to do so, and cannot support their FDCPA claim by ignoring the actual standard required under the law.

---

[9] The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

In the absence of the requisite evidence to support the Plaintiffs' contentions, the court cannot find, as a matter of law, that the Defendants are debt collectors. Therefore, Count XIII also fails.

## IV. CONCLUSION AND ORDER

For the reasons explained above, the parties' respective motions to strike, doc. 41 and doc. 42, are **DENIED**. The Defendants' motion for summary judgment, doc. 32, is **GRANTED in part**. With the exception of Count XI—in particular, as it relates to the two QWRs the Defendants acknowledge receiving—the Plaintiffs' claims against the Defendants are **DISMISSED WITH PREJUDICE**.

**DONE** the 26th day of June, 2018.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

PRE-TRIAL DOCKET
HON. ABDUL K. KALLON, PRESIDING

**BIRMINGHAM, ALABAMA**

This case is set for a pre-trial hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure. A conference-type hearing will be held in the 4th floor jury assembly room in the Hugo Black Federal Courthouse in Birmingham, Alabama at the time indicated.

The hearing will address all matters provided in Rule 16, including the limitation of issues requiring trial, rulings on pleading motions, and settlement possibilities.

Counsel attending the conference are expected to be well-informed about the factual and legal issues of the case, and to have authority to enter appropriate stipulations and participate in settlement discussions. <u>Counsel appearing at the conference will be required to proceed at trial notwithstanding the naming of others as designated trial counsel</u>.

Promptly upon receipt of this notice, plaintiff's counsel is to initiate discussions with other counsel aimed at ascertaining which basic facts are not in dispute, at clarifying the parties' contentions (for example, just what is denied under a "general denial") and at negotiating workable procedures and deadlines for remaining discovery matters. <u>At least four (4) business days in advance of the conference, plaintiff's counsel is to submit to chambers (via email at kallon_chambers@alnd.uscourts.gov) a proposed Pre-trial Order in WordPerfect or Microsoft Word format</u>, furnishing other counsel with a copy. It is anticipated that in most cases the proposed order, with only minor insertions and changes, could be adopted by the court and signed at the close of the hearing.

A sample of a proposed Pre-trial Order is available on the Chamber web site (www.alnd.uscourts.gov/Kallon/Kallonpage) to illustrate the format preferred by the court and also to provide additional guidance and instructions. Each order must, of course, be tailored to fit the circumstances of the individual case.

Counsel drafting this proposed order should consider the utility this document will provide for the litigants, the jury, and the court alike. The court anticipates using the pretrial order to (1) identify and narrow the legal and factual issues remaining for trial, and (2) provide jurors with the legal and factual context of the dispute. This order should **not** revisit at length arguments made in previous filings with the court, nor should it serve as another venue for adversarial posturing. Pretrial orders should be simple, short, and informative.

IN ANY CASE WHERE COUNSEL HAVE ANNOUNCED SETTLEMENT TO THE COURT, A CONSENT JUDGMENT IN SATISFACTORY FORM <u>MUST</u> BE PRESENTED TO THE COURT <u>PRIOR</u> TO THE SCHEDULED TRIAL DATE; OTHERWISE, THE CASE WILL BE DISMISSED <u>WITH</u> PREJUDICE.